IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Charles Anthony McDonald, | ) | No. CV-10-1513-PHX-DGC (LOA) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan, et al. | ) | |
| Respondents. | ) | |

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 3)  Respondents have filed an Answer, to which Petitioner has replied. (Docs. 12-13, 15)  After considering the briefing, exhibits, and relevant law, it is recommended that the Petition be denied. The Court finds that an evidentiary hearing is not warranted in this case, especially in view of the evidentiary hearing conducted on post-conviction review. *Cullen v. Pinholster*, ___ U.S. ___ , 131 S.Ct. 1388 (2011) (holding that, when a petitioner seeks habeas relief under 28 U.S.C. § 2254(d)(1), federal courts are restricted to the state court record when deciding claims previously adjudicated on the merits by the state courts.).

**I. Factual and Procedural Background**

    **A.  Charges, Trial and Sentencing**

On January 29, 2004, the State of Arizona filed an indictment in the Arizona Superior Court, Maricopa County, charging Petitioner with burglary in the second degree, a Class 3 felony, and possession of burglary tools, a Class 6 felony. (Respondents' Exh. A at

5) The State amended the indictment to allege 23 historical prior felony convictions, commission of the offenses while released from confinement, and aggravating circumstances other than prior convictions. (Respondents' Exh. A at 14, 15, 44)

Following a mistrial,[1] on December 8, 2004, a second trial commenced on December 9, 2004.[2] On December 14, 2004, the jury found Petitioner guilty as charged. (Respondents' Exh. B at 89, 91, 110; Exh. A 105, 109) The jury subsequently found that the State had established several aggravating circumstances beyond a reasonable doubt. (Respondents' Exh. B at 117) On March 2, 2005, the trial court sentenced Petitioner as a repetitive offender to an aggravated 20-year term of imprisonment on the second-degree burglary conviction and an aggravated concurrent 4.5-year term of imprisonment on the possession of burglary tools conviction. (Respondents' Exh. B at 126)

**B. Direct Appeal**

Petitioner timely appealed. Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). (Respondents' Exh. C) Thereafter, Petitioner filed a *pro se* brief asserting that: (1) the trial court denied Petitioner the right to self-representation; (2) the trial court considered improper aggravating circumstances when sentencing Petitioner; (3) the trial court improperly admitted a victim impact statement during sentencing; (4) the trial court denied Petitioner the opportunity to review the pre-sentence report; and (5) the trial court imposed an excessive sentence. (Respondents' Exh. D)

On March 2, 2006, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Respondents' Exh. E) Petitioner filed a motion for reconsideration which the appellate court denied. (Respondents' Exhs. F, G) Petitioner filed a petition for review in the Arizona Supreme Court, which was summarily denied on August 17, 2006. (Respondents' Exhs. H, I) Petitioner did not petition the United States Supreme Court for a *writ of certiorari*.

---

[1] The Honorable John A. Buttrick presided.

[2] The Honorable Gregory H. Martin presided.

**C. Post-Conviction Review**

On August 25, 2006, Petitioner, proceeding *pro se*, filed a notice of post-conviction relief in the trial court pursuant to Ariz.R.Crim.P. 32. (Respondents' Exh. J) Petitioner filed a petition for post-conviction relief, raising the following claims:

> 1. Trial counsel was ineffective for failing to request a mistrial based on juror bias.
>
> 2. Trial counsel was ineffective for failing to properly advise Petitioner on the merits of a plea offer.
>
> 3. Trial counsel was ineffective for failing to object to statements made by the prosecution on behalf of the victim's son at the sentencing hearing.
>
> 4. Trial counsel was ineffective for failing to effectively cross-examine state witnesses.
>
> 5. Trial counsel was ineffective for failing to adequately investigate and interview corroborating witnesses.
>
> 6. Trial counsel was ineffective for failing to present meaningful mitigation evidence at the sentencing hearing.

(Respondents' Exh. K) After the petition was fully briefed, the trial court conducted an evidentiary hearing on the issue of counsel's failure to adequately advise Petitioner of the strength and weaknesses of his case in association with a plea offer. (Respondents' Exh. B at 185, Exh. N) At the conclusion of the evidentiary hearing, on May 21, 2008, the court denied the petition. (Exh. N at 48)

Petitioner petitioned the Arizona Court of Appeals for review of the denial of post-conviction relief. The appellate court summarily denied review on November 24, 2009. (Respondents' Exhs. O, P) On December 18, 2009, the Arizona Supreme Court likewise denied review. (Respondents' Exh. Q)

**D. Federal Petition for Writ of Habeas Corpus**

Thereafter, Petitioner filed a timely[3] Petition for Writ of Habeas Corpus pursuant

---

[3] Respondents concede that the Petition is timely; thus, the Court will not further address this issue. (Doc. 12 at 5)

to 28 U.S.C. § 2254 in this District Court. (Doc. 3)  Petitioner raises the following claims for relief:

> 1.  The trial court denied Petitioner his right to self-representation.
>
> 2.  Petitioner's sentence violated the Sixth Amendment because the court submitted improper aggravating circumstances to the jury and the trial court considered an aggravating factor not submitted to the jury.
>
> 3.  Petitioner's aggravated sentences violate the Eighth Amendment.
>
> 4.  Trial counsel was ineffective for failing to advocate on Petitioner's behalf at sentencing.
>
> 5.  Trial counsel was ineffective for failing to conduct reasonable pretrial investigation.
>
> 6.  Trial counsel was ineffective for failing to raise the issue of juror bias.
>
> 7.  Trial counsel was ineffective for failing to properly advise Petitioner regarding the merits of a plea offer.
>
> 8.  Petitioner's right to due process was violated during post-conviction proceedings.

(Doc. 3)  The Court previously dismissed Ground 8 and directed Respondents to answer the remaining grounds for relief. (Doc. 4)  Respondents have filed an Answer to the Petition, to which Petitioner has replied. For the reasons set forth below, the Petition should be denied.

**II.  Exhaustion and Procedural Bar**

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state remedies available to him. 28 U.S.C. § 2254(b). When seeking habeas relief, petitioner bears the burden of showing that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*). The exhaustion inquiry focuses on the availability of state remedies at the time the petition for writ of habeas corpus is filed in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The prisoner "shall not be deemed to have exhausted . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c). In other words, proper exhaustion requires the prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. 845. "One complete

round" includes filing a "petition[] for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id.*

To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim."). In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief. *Crowell v. Knowles* , 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

In addition to presenting his claims to the proper court, a state prisoner must fairly present his claims to that court to satisfy the exhaustion requirement. A claim is "fairly presented" in state court only if a petitioner has described both the operative facts and the federal legal theory on which his claim is based. *Reese*, 541 U.S. at 28. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Id.* (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Similarly, general appeals to broad constitutional principles, such as, due process, equal protection, and the right to a fair trial, are insufficient to establish fair presentation of a federal constitutional claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial"). Likewise, a mere reference to the "Constitution of the United States" does not

preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). Even if the basis of a federal claim is "self-evident" or if the claim would be decided "on the same considerations" under state or federal law, the petitioner must make the federal nature of the claim "explicit either by citing federal law or the decision of the federal courts . . . ." *Lyons*, 232 F.3d at 668. A state prisoner does not fairly present a claim to the state court if the court must read beyond the pleadings filed in that court to discover the federal claim. *Baldwin*, 541 U.S. at 27.

In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds such as waiver or preclusion. *Beard v. Kindler*, ___ U.S.___, 130 S.Ct. 612, 614-19 (2009); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 729-30. Thus, a petitioner may be barred from raising federal claims that he did not preserve in state court by making a contemporaneous objection at trial, on direct appeal, or when seeking post-conviction relief. *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (stating that failure to raise contemporaneous objection to alleged violation of federal rights during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d 1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of Appeals held that habeas petitioner had waived claims by failing to raise them on direct appeal or in first petition for post-conviction relief.) If the state court also addressed the merits of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, *en banc* court held that the "on-the-

merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review). A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar. *Nunnemaker*, 501 U.S. at 803. However, "in order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of Petitioner's default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). The Supreme Court had held that "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review," and that "a discretionary rule can be 'firmly established' and 'regularly followed' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not in others." *Kindler*, 130 S.Ct. at 618. Likewise, occasionally excusing non-compliance with a procedural rule does not render a state procedural bar inadequate. *Dugger v. Adams*, 489 U.S. 401, 410-12 n. 6 (1989).

The second procedural default scenario arises when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state courts' procedural rules, such as, waiver or preclusion, would bar consideration of the previously unraised claims. *See*, *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted

his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Hughes,* 800 F.2d at 907-08.

## III. Standard of Review

This Court's consideration of the merits of Petitioner's claims is constrained by the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, ___ U.S. ___ , 131 S.Ct. 770, 786 (2011). Section "2254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings." *Id*. (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme mal-function in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Richter*, 131 S.Ct. at 785; *see also*, *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006). To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. ___ , ___, 130

S.Ct. 1855, 1866 (2010)). The Ninth Circuit has acknowledged that it cannot reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explains its ruling nor cites United States Supreme Court authority, the reviewing federal court must examine Supreme Court precedent to determine whether the state court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*, 537 U.S. 3, 8 (2003)). Citation to federal law is not required and compliance with the habeas statute "does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim', not a component of one, has been adjudicated." *Richter*, 131 S.Ct. at 784.

Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411. A state court decision results in an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Richter*, 131 S.Ct. 786 (citing *Yarborough*,

541 U.S. at 664). "'[E]valuating whether a rule application was unreasonable requires consider-ing the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determination.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664).

The habeas court presumes that the state court's factual determinations are correct and petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004).

**IV. Analysis**

Mindful of the foregoing principles, the Court will consider the Petition and determine whether Petitioner's claims are properly before the Court on habeas corpus review. If so, the Court will consider the merits of Petitioner's claims.

**A. Ground One - Right to Self-Representation**

In Ground One, Petitioner argues that he was denied the right to represent himself at trial. (Doc. 3 at 6)  Respondents concede that this claim is properly before the Court on habeas corpus review. (Doc. 12 at 12)

Prior to trial, Petitioner filed a motion to proceed in *propria persona*. (Respon-dents' Exh. A at 32)  Before Petitioner filed that motion, his trial had been continued from May to June 2004.  (Respondents' Exh.  B at 28)  On June 2, 2004, the continuance panel granted a second extension and continued the trial to July 20, 2004. (*Id*. at 31)  Petitioner moved to proceed in *propria persona* on June 30, 2004. The trial court scheduled oral argument for July 9, 2004. (Respondents' Exh. A at 32, Exh. B at 33)  During the July 9, 2004 hearing, Petitioner informed the court that he lacked confidence in trial counsel, wanted the assistance of advisory counsel, and needed an additional 90 to 180 days to prepare for trial. (Respondents' Exh. S at 5-7)  The trial court advised Petitioner that his simultaneous request to proceed in *propria persona* and for an extension of time weighed

1   against granting Petitioner's request to represent himself. (Respondents' Exh. S at 7) The

2   court also informed Petitioner that it could not grant a continuance, but that Petitioner would

3   have to return to the continuance panel to renew his request. (Respondents' Exh. S at 7; Exh.

4   B at 30) The trial court then inquired whether Petitioner was prepared to proceed to trial on

5   July 20, 2004. Petitioner stated he was not ready to proceed on July 20, 2004 by himself.

6   (Respondents' Exh. S at 9) Petitioner explained that he thought the trial court could

7   continue the trial date. The trial court reiterated that it lacked the authority to grant a contin-

8   uance and that Petitioner would have to seek a continuance from the continuance panel.

9   (Respondents' Exh. S at 10) The trial court proposed substituting counsel and Petitioner

10  responded that he would "be willing to try that." (Respondents' Exh. S at 11) The trial court

11  denied the motion without prejudice, withdrew the Office of the Public Defender from

12  further representation of Petitioner, and appointed the Office of the Legal Defender.

13  (Respondents' Exh. S at 15-16) The court emphasized that Petitioner retained the right to

14  represent himself and could "decide to try to exercise that [right] at a later time." (Respon-

15  dents' Exh. S at 15)

16          On direct appeal, Petitioner argued that the trial court had denied his right to self-

17  representation. (Respondents' Exh. D at 8-13) Petitioner argued that the trial court used a

18  "threat tactic" to deny Petitioner's right to self-representation by stating that it could not

19  continue the trial date. (*Id.* at 11) The appellate court found that the trial court had not

20  threatened Petitioner, but had simply informed him that he would be held to the same

21  standard as an attorney, and would not necessarily be granted a continuance of the trial date.

22  (Respondents' Exh. E at 5-6) The appellate court found that the trial court did not deny

23  Petitioner his right to self-representation by advising him of the disadvantages of self-

24  representation. (*Id.*) The appellate court noted that the trial court had clarified that Petitioner

25  retained the right to self-representation and could renew his request. (*Id.*) The court also

26  noted that nothing in the record indicated that Petitioner had ever renewed his request to

27  represent himself. (Respondents' Exh. E at 5) The appellate court concluded that the trial

28  court did not violate Petitioner's right to self-representation. (Respondents' Exh. E)

As Respondents argue, Petitioner has not shown that the State court's decision was contrary to, or an unreasonable application of, federal law, or that it was based on an unreasonable determination of the facts. 28 U.S.C. 28 U.S.C. § 2254(e)(1). Under the Sixth Amendment, criminal defendants have a right to be represented by counsel. The right to counsel has been interpreted to include "an independent constitutional right" of the accused to represent himself at trial, and thus waive the right to counsel. *Feretta v. California*, 422 U.S. 806 (1975). A defendant who seeks to represent himself "must 'knowingly and intel-ligently'" waive the right to counsel by being "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)); *see also*, *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). A criminal defendant's request for self-representation must also be unequivocal, timely, and not for purposes of delay. *Faretta*, 422 U.S. at 835; *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004); *see also United States v. Arlt*, 41 F.3d 516, 519 (9th Cir. 1994). Courts consider three factors to determine whether a request for self-representation is unequivocal: "the timing of the request, the manner in which the request was made, whether the defendant repeatedly made the request." *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007). In applying these factors, the court gives significant deference to the state court's factual findings. *Id.*, 504 F.3d at 882 (citing 28 U.S.C. § 2254(e)(1) (state court's factual findings "shall be presumed to be correct").

Here, during the *Faretta* hearing, the trial court advised Petitioner of the responsi-bilities and disadvantages of self-representation. Petitioner agreed to the trial court's pro-posal to substitute counsel. (Respondents' Exh. S, Tr. 7/9/04 at 7-11) Petitioner's request to represent himself was not unequivocal when he simultaneously requested advisory counsel, a continuance of the trial date, and conceded that he was not prepared to proceed on the trial date. (*Id.*) The matter proceeded to trial in December 2004. Petitioner did not renew his request to represent himself, even though the trial court had advised him that he could do so at any time.

The record supports the State court's finding that Petitioner's right to self-representation was not violated. Petitioner has not shown that the State court's rejection of this claim was based on an unreasonable determination of the facts, or was contrary to, or based on an unreasonable application of, controlling Supreme Court precedent. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) ("[A] federal court may not second-guess a state court's fact-finding process unless . . . it determines that the state court was not merely wrong, but actually unreasonable."). Accordingly, Petitioner is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

**B. Ground Two - Aggravating Circumstances**

In Ground Two, Petitioner argues that his Sixth Amendment rights, as articulated in *Blakely v. Washington*, 542 U.S. 296 (2000), were violated when the trial court asked the jury to consider an improper aggravating circumstance at sentencing. (Doc. 3 at 6-7) Petitioner asserts that the aggravating circumstance, "use, threatened use, or possession of a deadly weapon," was improperly submitted to the jury because Petitioner was not charged with those circumstances and use of a weapon was not a fact reflected in the guilty verdict. Petitioner further argues that the trial court improperly considered a victim impact statement as an aggravating circumstance because it was not submitted to the jury for consideration. (*Id.*) Respondents concede that Petitioner's sentencing claims are properly before the Court. (Doc. 12 at 15)

Before trial, the State filed an allegation of aggravating circumstances other than prior convictions alleging that:

> 1.  The offense(s) involved the use, threatened use or possession of a deadly weapon or dangerous instrument during the commission of a crime, specifically a gun.
>
> 2.  The defendant committed the offense(s) as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.
>
> 3. The offense(s) caused emotional harm to the victim.
>
> 4.  At least one victim of the offense was sixty-five or more years of age or was a disabled person.

(Respondents' Exh. A at 44)

After the jury found Petitioner guilty, the aggravation phase began. The jury considered whether the State proved the aggravating circumstances beyond a reasonable doubt. (Respondents' Exh. A at 112-113)  With regards to the burglary conviction, the jury considered whether: (1) the offense involved the use of a weapon, (2) Petitioner committed the offense for pecuniary gain, (3) the offense caused emotional harm to the victim, and (4) whether one of the victims was at least 65 years old or disabled. (Respondents' Exh. A at 112; Exh. B at 117) The jury found that the State had failed to prove that a weapon was used in the commission of the offense, but found the existence of the other three aggravating factors beyond a reasonable doubt. (Respondents' Exh. A at 112)  Before sentencing Petitioner, the trial court found the allegation that Petitioner had 23 historical prior felony convictions was established beyond a reasonable doubt.  (Respondents' Exh. B at 119)  The trial court sentenced Petitioner to an aggravated term of 20 years' imprisonment on the second-burglary conviction. (Respondents' Exh. B at 126)

With regards to the possession of burglary tools conviction, the jury considered whether: (1) the offense involved the use of a weapon, and (2) whether Petitioner committed the offense for pecuniary gain. (Respondents' Exh. A at 13) The jury found beyond a reasonable doubt that Petitioner committed the offense for pecuniary gain. (*Id*.)  The jury further found that the State had failed to prove that the offense involved the use of a weapon. (*Id*.)  The trial court sentenced Petitioner as a repetitive offender to an aggravated 4.5-year term of imprisonment. (Respondents' Exh. B at 126)

On direct appeal, Petitioner raised the issue of improper aggravating circumstances. (Respondents' Exh. D at 14-16)  The appellate court found that the trial court did not consider the objectionable aggravating circumstance in sentencing Petitioner.  (Respondents' Exh. E at 7)

With regards to the "victim impact statement," during the sentencing hearing, the prosecutor relayed several statements from the victims' son, who lived out of state, was not present during the sentencing hearing, and had not written a letter to the court. The prosecutor stated that the victims' son, Patrick, was staying with his parents during the incident.

(Respondents' Exh. T at 3)  The victims' son was concerned that the incident had hastened the death of his mother who was ill at the time of burglary and died several months later. (*Id.* at 4)  The prosecutor advised the court that the victim's son felt the maximum sentence was appropriate  (*Id.*)  Petitioner did not object to the prosecutor's statements at the sentencing hearing.  (Respondents' Exh. T)  On direct appeal, Petitioner argued that those statements unfairly influenced that the court in imposing a maximum, rather than the presumptive, sentence.  (Respondents' Exh. D at 16)

The appellate court found that the "form and method in which [the] statement was presented" to the trial court might have been improper, but that its admission was not funda-mental error because Petitioner's sentence was within the statutory range, several aggrava-ting factors were present, and there was no evidence that the trial court's sentencing determination was influenced by the victim impact statement.  (Respondents' Exh. E at 8) Petitioner has not shown that the State court's ruling was to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Before *Blakely v. Washington*, 542 U.S. 296 (2000), in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court specifically carved out an exception for prior convictions. *Id.*; *United States v. Castillo-Rivera*, 244 F.3d 1020, 1025 (9th Cir. 2001) (holding the district court could consider a defendant's prior conviction in imposing a sentence enhancement even though such conduct had not been charged in the indictment, presented to the jury, and proved beyond a reasonable doubt); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2001) (noting *Apprendi* held all prior convictions are exempt under *Apprendi*'s new rule, therefore, district court properly considered prior convictions in sentencing).

As previously stated, under *Blakely*, any factor which lead to a sentence greater than that which would be imposed based on the jury's finding of guilt must be found by the jury beyond a reasonable doubt. 542 U.S. at 301. *Blakely* reaffirmed the exemption for prior

- 15 -

convictions and reiterated that they may serve as aggravating factors without further proof. *United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004) (citing *Blakely*, 542 U.S. at 303). *Blakely* also clarified that the "statutory maximum" sentence is initially the presumptive term and is the "maximum sentence the judge may impose solely *on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Blakely*, 542 U.S. at 303-04 (emphasis in original). The *Blakely* Court concluded that, before a trial court can impose a sentence above the statutory maximum, a jury must find beyond a reasonable doubt, or defendant must admit, all facts "*legally essential* to punishment." *Id.*, 542 U.S. at 313 (emphasis added).

With respect to Petitioner's second-degree burglary conviction on Count 1, the jury found, beyond a reasonable doubt, the following aggravating factors: (1) Petitioner committed the offense for pecuniary gain, (2) the offense caused emotional harm to the victim, and (3) one of the victims was over 65 years old or disabled. The jury found that the State had failed to prove an additional aggravating factor regarding use of a weapon during com-mission of the offense. Contrary to Petitioner's argument, there is no evidence that the trial court considered that factor in sentencing Petitioner. Rather, in sentencing Petitioner on Count 1, the court noted that the jury had found "three aggravators: You committed the offense for pecuniary gain, the emotional harm to the victim, and then at least one of the victims was 65 or more years of age or was a disabled." (Respondents' Exh. T at 8)  The Court found that there were sufficient aggravating factors to justify a sentence in excess of the presumptive. (*Id.*)  Moreover, the existence of one *Blakely*-complaint factor - such as a prior conviction, facts admitted by defendant, or found beyond a reasonable doubt by the jury - is sufficient support for the imposition of "a sentence anywhere within the statutory range." *Jones v. Schriro*, 2006 WL 1794765, * 3 (D.Ariz. June 27, 2006) (stating that "once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a

sentence up to the maximum prescribed in that statute.'" *Id.* at * 2 (quoting *State v. Martinez*, 210 Ariz. 578, 585, 115 P.2d 618 (2005)).

Likewise, with respect to Petitioner's conviction for possession of burglary tools, the jury found, beyond a reasonable doubt, that Petitioner committed the offense for pecuniary gain. (Respondents' Exh. A at 13)  The jury further found that the State had failed to prove beyond a reasonable doubt that the offense involved the use of a weapon. (*Id.*) Nothing in the record suggests that the State court relied on the unproven aggravating factor - use of a weapon - when sentencing Petitioner. Indeed, the Court noted that the jury found the pecuniary gain aggravating factor and that it was sufficient "to justify a sentence in excess of the presumptive term . . . ." (Respondents' Exh. T at 8)

Petitioner further argues that the trial court's alleged consideration of the victim impact statement violated *Blakely*. Nothing in the record indicates that the court considered the prosecutor's statements made on behalf of the victim's son when imposing the sentences. (Respondents' Exh. T)  However, assuming the trial court considered the victim impact statement in sentencing Petitioner, it could do so even if the jury did not find the victim impact statement proven beyond a reasonable doubt. Once a single *Blakely*-compliant or *Blakely*-exempt aggravating factor was found, the court could consider other factors in determining Petitioner's sentence. *Jones,* 2006 WL 1794765, * 3.

Finally, the trial court did not violate *Blakely* by considering Petitioner's prior convictions when sentencing him. In *Apprendi*, the Supreme Court specifically carved out an exception for prior convictions. *Apprendi*, 530 U.S. at 490; *United States v. Maria-Gonzalez*, 268 F.3d 664, 670 (9th Cir. 2001) (holding prior aggravated felony conviction did not constitute an element of the offense where base sentence for illegally reentering the United States following deportation is enhanced if deportation was subsequent to conviction for aggravated felony). *United States v. Castillo-Rivera*, 244 F.3d 1020, 1025 (9th Cir. 2001) (holding the district court could consider defendant's prior conviction in imposing sentence enhancement even though such conduct had not been charged in the indictment, presented to the jury, and proved beyond a reasonable doubt). *Blakely* confirmed that exception. *Blakely*,

542 U.S. at 301.

Because the sentences imposed comported with the Sixth Amendment as construed in *Blakely*, Petitioner is not entitled to habeas corpus relief on his sentencing claims.

### C. Ground Three - Disproportionate Sentence

In Ground Three, Petitioner argues that the sentences are disproportionate to other sentences imposed for the same conduct. (Doc. 3 at 8) The jury found Petitioner guilty of burglary in the second-degree, a Class 3 felony, and possession of burglary tools, a Class 6 felony. (Respondents' Exhs. A at 105, 109) The convictions were based on Petitioner's nighttime entry into an elderly couple's home. (Respondents' Exh. E) The jury found, beyond a reasonable doubt, the existence of three aggravating factors pertaining to the burglary conviction, and one aggravating factor pertaining to the possession of burglary tools conviction. (Respondents' Exh. at 112-13) Before sentencing Petitioner, the trial court determined that Petitioner had 23 historical prior felony convictions. (Respondents' Exh. B at 119) The court imposed an aggravated term of 20 years' imprisonment on the burglary conviction and sentenced Petitioner as a repetitive offender to an aggravated concurrent 4.5-year term on the possession of burglary tools conviction. (*Id.*)

On direct appeal, Petitioner argued that the trial court imposed an excessive sentence based on the improper consideration of an aggravating factor not found by the jury, the improper consideration of the victim impact statement, and Petitioner's lack of opportunity to review and challenge inaccuracies in an untimely disclosed pre-sentence report. (Respondents' Exh. D at 18) The appellate court found that Petitioner's sentence fell within the statutory guidelines, and that imposition of a maximum sentence was supported by the aggravating circumstances found by the jury and by Petitioner's prior convictions as determined by the trial court. (Respondents' Exh. E at 9-10) Petitioner has not shown that the State court's ruling is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1)

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." *Harmelin v.*

*Michigan*, 501 U.S. 957, 1001 (1991). A sentence that is "grossly disproportionate" to the crime for which a defendant was convicted may violate the Eighth Amendment. *Harmelin*, 501 U.S. at 1001 (1991). "[O]utside of the context of capital punishment, successful challenges to the proportionality of particular sentences [are] exceedingly rare . . . . Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983) (citations omitted). Petitioner is correct that the Supreme Court has noted that a proportionality analysis under the Eighth Amendment should consider the following criteria, including: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.*, 463 U.S. at 292. The Supreme Court, however, has not uniformly applied this three step analysis. *See, e.g., Harmelin*, 501 U.S. at 1005; *Rummel v. Estelle*, 445 U.S. 263, 285 (1980).

In an effort resolve this inconsistency, the Supreme Court has identified what constitutes "clearly established federal law" in its Eighth Amendment jurisprudence for the purpose of habeas review. Specifically, in *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003), after conceding that its "precedents in this area have not been a model of clarity," the Supreme Court held that "one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Id.*, 538 U.S. at 72; s*ee also Gonzalez v. Duncan*, 551 F.3d 875, 879 (9th Cir. 2008). In so holding, the Court did not refer to a constitutional imperative requiring courts to make the various intra- and inter-jurisdictional comparisons recommended by the *Solem* court. *Lockyer*, 538 U.S. at 72. Rather, the Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73.

When analyzing an Eighth Amendment proportionality challenge, a court determines whether a "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *United States v. Bland*, 961 F.2d 123, 129 (9th Cir. 1992) (citing *Harmelin*, 501 U.S. at 1001) (finding that sentence of life imprisonment without possibility of parole did not raise inference of disproportionality when imposed on a felon in possession of a firearm.); *see also Harris v. Wright*, 93 F.3d 581, 583-85 (9th Cir. 1996) (holding that a mandatory sentence of life imprisonment without possibility of parole did not raise inference of disproportionality when imposed on convicted murderer). A court generally will not overturn a sentence on Eighth Amendment grounds provided it does not exceed statutory limits. *United States v. Zavala-Serra*, 853 F.2d 1512, 1518 (9th Cir. 1988) (upholding sentence of ten years' imprisonment for conspiracy to possess and distribute 2,000 grams of cocaine where sentence was within statutory range.)

Here, Petitioner's sentences, totaling 20 years imprisonment, are not grossly disproportionate to his convictions for second degree burglary and possession of burglary tools. The jury found aggravating circumstances - Petitioner committed the offenses for pecuniary gain, the offense caused emotional harm to the victim, and one of the victims was over 65 years old or disabled. Additionally, Petitioner had an extensive criminal history consisting of 23 prior felonies, involving kidnaping and similar offenses of burglary and armed robbery. *See Ewing v. California*, 538 U.S. 11, 30 (2003) (finding that sentence of 25 years to life in prison, imposed for felony grand theft under the three strikes law, is not grossly disproportionate and therefore does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. And stating, that "Ewing's sentence is a long one. But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated."); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 439 (9th Cir. 2007) (finding that sentence of 25 years to life imprisonment for shoplifting $114.40 worth of tools was not grossly disproportionate in view of defendant's "extensive felony record" dating back almost sixty years).

Petitioner's sentences do not raise an inference of gross disproportionality. Petitioner has not shown that the State court's determination that his sentences do not violate the Eighth Amendment is contrary to, or rests on an unreasonable application of, federal law. 28 U.S.C. § 2254. Accordingly, he is not entitled to habeas corpus relief.

### D.  Ground Four - Ineffective Assistance of Counsel

In Ground Four, Petitioner contends that trial counsel was ineffective for failing to advocate on his behalf and present mitigating evidence at sentencing. (Doc. 3 at 9)  Petitioner specifically argues that counsel failed to object to statements the prosecutor made on behalf of the victims' son, who was not present during the sentencing hearing. (*Id.*)  During sentencing, the prosecutor stated that the victims' son was afraid for his parents during the time Petitioner was inside the house with them, and speculated that the incident had hastened his mother's death several months later. (*Id.*)  Petitioner further argues that trial counsel was ineffective for failing to present unspecified mitigating evidence. Petitioner raised these claims on during post-conviction review. (Respondents' Exh. K at 3-18)  The State court rejected these claims without discussion. (Respondents' Exh. B at 185; Exh. N at 47-48) Although the State court did not explain its decision, Section 2254(d) applies to this summary denial of Petitioner's claim. *Richter*, 562 U.S. at ___, 131 S.Ct. at 786.

Respondents argue that Petitioner is not entitled to habeas corpus relief because there is no clearly established federal governing the assistance of counsel during non-capital sentencing. Respondents correctly note that the Supreme Court has not articulated a standard which applies to ineffective assistance of counsel claims in the context of non-capital sentencing noting that, in *Strickland*, the Supreme Court declined to "consider the role of counsel in ordinary sentencing which . . . may require a different approach to the definition of constitutionally effective assistance." *Strickland*, 466 U.S. at 686. *See also Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1233 (9th Cir. 2005).  "Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law." *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007); s*ee also Wright v. Van*

*Patten*, 552 U.S. 120, 124-26 (2008). In other words, if habeas corpus relief depends on the resolution of an "open question in [Supreme Court] jurisprudence,' § 2254(d)(1) precludes relief." *Crater v. Galaza*, 491 F.3d 1119, 1123 (9th Cir. 2007) (quoting *Musladin*, 549 U.S. at 76) (stating that "[g]iven the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonably applied clearly established federal law.'"). Thus, as a threshold matter, Petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1) because there is no clearly established Supreme Court precedent in the noncapital sentencing context. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006); *Cooper-Smith*, 397 F.3d at 1244. Even if the *Strickland* standard for capital cases applied to this noncapital sentencing, Petitioner's claims asserted in Ground Four fail.

The relevant federal law governing claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing of "both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U. S. ___, 129 S.Ct. 1411, 1420 (2009). "'Surmounting *Strickland's* high bar is never an easy task.'" *Richter*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S.___, 130 S.Ct. 1473, 1485 (2010)). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 131 S.Ct. at 788 (quoting *Strickland*, 466 U.S. at 690). Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult, because both standards are "highly deferential," 466 U. S. at 689, and because *Strickland's* general standard has a substantial range of reasonable applications. The issue under § 2254(d) is not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Richter*, 131 S.Ct. at 788. The Supreme Court recently addressed the reasons for a "most deferential" standard for judging counsel's performance:

> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.

- 22 -

*Premo v. Moore*, ___ U.S.___, 131 S.Ct. 733, 739–40 (2011). Mindful of these principles, the Court will consider whether the state court unreasonably applied *Strickland* to the facts of this case. 28 U.S.C. § 2254.

**1. Failure to Object to Victim Impact Statement**

Even if the statement of the victims' son was not presented to the sentencing court in the appropriate manner, Petitioner cannot show that he was prejudiced. As the court of appeals noted, there is no evidence that the trial court was improperly influenced by the victim impact statement in sentencing Petitioner. (Respondents' Exh. E at 8)  The aggravated sentence that the trial court imposed was based on Petitioner's extensive criminal history, and the aggravating circumstances found by the jury. At sentencing, the court stated:

> All right. Well, I remember your testimony. I remember your defense. The jury didn't buy it, and I don't either.
>
> Now you are here as a repetitive offender with two priors. That said, you have 20 prior convictions. I understand a lot of them are in the same case, but you really cover it. You got a possession for sale conviction, you've got - - 17 counts of burglary, armed robbery, and kidnapping out of one of our matters some time ago.
>
> My recollection is that you had a big prison sentence in that case. You also got a conviction for armed robbery. So your record remains aggravating even with the fact that you are a repetitive offender.
>
> The jury found on Count 1 the existence of . . . three aggravators: You committed the offense for pecuniary gain, the emotional harm to the victim, and then at least one of the victims was 65 or more years of age or was a disabled person; and then aggravators two and three, if you — well, the pecuniary gain aggravator was also found on . . .the second count.
>
> I think certainly there are sufficient aggravating factors in this case and your record to justify a sentence in excess of the presumptive term on  each count. And I think [the probation officer's] recommendation is well taken, frankly. I mean you could justify the absolute maximum.
>
> I am going to give you the maximum sentence on both counts. It is the judgment and sentence of the Court on Count 1 that the defendant be imprisoned for 20 years, on Count 2 for 4 and a half years.

(Respondents' Exh. T at 7-8)  The trial court's statements at sentencing indicate that it did not rely on the victim impact statement - as conveyed by the prosecutor - when sentencing Petitioner. Rather, the court relied on the aggravating factors and Petitioner's extensive

- 23 -

criminal history. Accordingly, Petitioner has not shown that trial counsel was ineffective at sentencing for failing to object to the statements of the victims' son as conveyed by the prosecutor.

### 2. Failure to Present Mitigating Evidence at Sentencing

Petitioner also argues that trial counsel was ineffective for failing to present mitigating evidence at sentencing. (Doc. 3 at 9) Petitioner presented this claim on post-conviction review. (Respondents' Exh. K) Petitioner, however, did not identify what evidence counsel should have presented at sentencing. The post-conviction court summarily rejected Petitioner's claim. Although the State court did not explain its decision, Section 2254(d) applies to this summary denial of Petitioner's claim. *Richter*, 562 U.S. at ___, 131 S.Ct. at 786. Petitioner has not shown that the state court's rejection of this claim was contrary to, or based on an unreasonable application of, controlling federal law.

To the extent that Petitioner argues that trial counsel should have called witnesses to testify at the sentencing hearing, Petitioner's failure to identify such witness is fatal to his claim. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative . . . . In addition, for [a petitioner] to demonstrate the requisite *Strickland* prejudice, [he] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (citations omitted); *see also United States v. Hardin*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (rejecting the claim of ineffective assistance based on counsels' failure to call a witness who would have taken responsibility for a gun found in defendant's possession because, *inter alia*, "[t]here is no evidence in the record which establishes that Washington would testify in [petitioner's] trial."). Petitioner has not presented any factual or legal arguments in support of his claim that trial counsel was ineffective for failing to present mitigating evidence at sentencing. Petitioner's conclusory allegations are not sufficient to support a claim of ineffective assistance of counsel. *Villafuerte v. Stewart*, 111 F.3d 616 (9th Cir. 1997).

The record reflects that Petitioner's counsel advocated for Petitioner and argued

for the presumptive, or a mitigated term, at the sentencing hearing.  (Respondents' Exh. T at 7) Counsel discussed Petitioner's intelligence, recent employment history, and family support.  (Respondents' Exh. T at 7)  Petitioner personally addressed the sentencing court and apologized for intruding on the victims' property. (*Id*.)  The sentencing court found that aggravated sentences were warranted because of Petitioner's extensive criminal history and the aggravating factors found by the jury. (*Id*. at 7-8)  Petitioner does not present any specific evidence that counsel should have presented to have mitigated his sentence. Petitioner has failed to show that the trial court's rejection of this claim was contrary to, or an un-reasonable application of, federal law.

### E.   Ground Five - Failure to Investigate

In Ground Five, Petitioner argues that trial counsel was ineffective for failing to conduct an adequate pretrial investigation to locate witnesses who could have supported Petitioner's defense. (Doc. 3 at 10)  Petitioner contended that he entered the victims' home because he was looking for Danny Miller, who was giving him a ride home and had left him in the car after telling Petitioner he "had business in the [victims'] home." (Doc. 3 at 10) Petitioner asserts that, when Miller did not return to the car in a reasonable time, Petitioner went in search of him. Petitioner claims that he entered the victims' home through an open door, then went inside the bathroom. While he was using the bathroom, police entered the house and discovered Petitioner. (Doc. 3 at 10A-10B)  Petitioner asserts that counsel should have located and interviewed Danny Miller, conducted a latent print comparison with the fingerprints found at the scene, and investigated discrepancies in the witness' description of the man he saw and described to the 911 operator. (*Id*.)

Petitioner presented this claim on post-conviction review, which was rejected without discussion. Although the State court did not explain its decision, Section 2254(d) applies to this summary denial of Petitioner's claim. *Richter*, 562 U.S. at ___, 131 S.Ct. at 786.

"Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes a particular investigations unnecessary." *Strickland*, 466 U.S. at 691.

Additionally, "a particular decision not to investigate must be directly assessed for reasonableness in all circumstances." *Id.*

> A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.

To assess Petitioner's claim that counsel was ineffective for failing to investigate, the evidence presented at Petitioner's trial is relevant. The evidence indicated that Petitioner stepped out from behind the door in the master bathroom in the victims' home as a police officer approached the bathroom to search it. (Respondents' Exh. U at 32) Petitioner struggled as he was arrested and never told police that he was looking for someone inside the house. (*Id.* at 33-34) Police officers found a Leatherman's tool on Petitioner's person. Police officers on the scene also found that: (1) the light bulb had been removed from the motion sensor over the back door and placed on the ground; (2) there were pry marks on the back window; (3) a gym bag containing a purse and a jewelry box were on the ground outside the patio door; and (4) there was a flashlight near the door to the master bedroom. (*Id.* at 25-27, 35-36) Officers also observed a picture or painting, and a wrapper of some kind in the middle of the floor of the walk-in closet of the master bedroom, which seemed out of place. (*Id.* at 44) A file cabinet in a spare bedroom had been pried open. (*Id.* at 46-48) Three houses away from the victims' home, police officers found an unoccupied vehicle with the engine running, and a window partially open. (Respondents' Exh. V at 39-41) The car was registered to a person named Lamar Ellis. (Respondents' Exh. V at 41) The police did not find anyone else in the backyard, alley, or inside the house. (Respondents' Exh. U at 25-26, 43)

This evidence undermines Petitioner's assertion that he was merely present at the house looking for a person named Danny Miller and rendered the investigation that Petitioner claims counsel should have undertaken unnecessary. Additionally, Petitioner testified at trial and presented his theory of defense. (Respondents' Exh. V at 5) Petitioner explained that Danny Miller was driving him home and stopped at the victims' house. (Respondents' Exh. V at 5-6) After waiting in the car for a while, Petitioner "went looking for [Miller.]" (Respondents' Exh. V at 6) Petitioner testified that he walked to the house, and entered through the back door. (*Id*. at 8) He continued to walk through the house looking for Miller and then decided to use the bathroom. (*Id*.) While he was using the bathroom, Petitioner heard people talking, then opened the door, and saw the police. (*Id*. at 9-10) Petitioner testified that a police officer directed him to "hit the floor, which [he] did." (*Id*. at 10) Petitioner testified that he never saw Danny Miller inside the house. (*Id*.) He also testified that Danny Miller "was shot in a police gun battle," some time before trial. (Respondents' Exh. V at 5) The record reflects that Petitioner did not tell police that he was inside the victims' home looking for Danny Miller, and nothing at the scene suggested the presence of a second person. Police officers did not see another person near the victims' home. The victims' son saw the shadow of one person rummaging through his parents' bed-room with a flashlight. A single flashlight was recovered by the door to the master bedroom. The car in which Petitioner had allegedly been a passenger was found three houses away from the victims' home. Nothing in the car connected it to Danny Miller.

Based on the foregoing, counsel's strategic decision not to investigate the where-abouts of Danny Miller was not ineffective assistance. On post-conviction review, defense counsel testified that Petitioner's "story was simply beyond belief." (Respondents' Exh. N at 28) According to Petitioner, Danny Miller died before trial and could not have testified on Petitioner's behalf. At trial, Petitioner presented his theory of defense - that he was inside the victims' home because he was looking for Danny Miller. Aside from Petitioner's testimony, evidence showed that Petitioner was in the victims' home when the burglary was in progress. He had on his person a Leatherman's Tool containing pliers. The police

officers' testimony confirmed that Petitioner was found at the scene of the burglary. Finally, Petitioner did not argue that Danny Miller committed the offense, but that he was merely looking for Danny Miller who was inside the house because he had "some business" therein. In view of the foregoing, Petitioner has not shown that there is a reasonable probability that, but for counsel's failure to investigate the presence of Danny Miller, the result of the trial would have been different.

Petitioner also argues that counsel was ineffective for failing to investigate and present testimony regarding the discrepancies between the description of the intruder the victims' son gave to the 911 operator and Petitioner's appearance. Any discrepancies between Petitioner's appearance and the description of the intruder given by the victims' son is explained by the son's brief opportunity to observe the intruder in the dark. (Respondents' Exh. W at 143-144 ) The victims' son, Patrick, testified that he woke up in the middle of the night and went to the kitchen to get some water. (*Id*. at 142-43) He noticed the back-door was open and saw his "dad's tennis bag with jewelry boxes and whatnot in it" on the ground. (Respondents' Exh. W at 143) Patrick testified that he returned to the kitchen and noticed a flashlight coming from his parents' bedroom. (*Id*.) He walked to the bathroom and "walked up on somebody that didn't belong there." (*Id*.) Patrick testified that he saw the person in his parents' darkened bedroom from "the back . . . [l]ong enough to see what was going on and to get out of there." (Respondents' Exh. W at 144) He testified that the person appeared to be a man by "the build." (*Id*. at 145) Patrick further testified that he did not see the person's face, and "couldn't really say" what type of clothing the intruder was wearing. (Respondents' Exh. W at 145) Thus, any discrepancies between Petitioner's appearance and the description of the intruder that Patrick gave the 911 operator was explained by Patrick's own testimony that he only caught a glimpse of the back of the intruder in the dark. More-over, the intruder's description was not an issue because police found Petitioner in the victims' home.

Petitioner also argues that counsel was ineffective for failing to investigate for latent fingerprints. (Doc. 3 at 10C) Police officers were unable to recover fingerprints from

the flashlight that was found near the master bedroom. (Respondents' Exh. U at 44-46) Police officers recovered two latent fingerprints from the file cabinets in the second bedroom, and submitted them for testing. (Respondents' Exh. U at 47-48) Petitioner was excluded as a match for one of the prints and the other could not be identified. (Respondents' Exh. X at 20) Officers did not try to recover prints from a wooden dresser in the bedroom because the "grain structure" is "too rough to be able to see the tiny ridges on your finger." (Respondents' Exh. U at 50) Officers did not try to recover fingerprints from the light bulb from the motion sensor. (*Id*. at 52) The fingerprints available to defense counsel - those taken by the police officers the night of the burglary - were exculpatory because they were not Petitioner's. Evidence regarding the fingerprints was presented at trial. Petitioner has not shown how additional investigation into the fingerprints would have benefitted his defense. Moreover, Petitioner has not shown that he was prejudiced by counsel's failure to investigate latent fingerprints when the fingerprint evidence presented at trial was exculpatory.

For the reasons set forth above, Petitioner is not entitled to habeas corpus relief on his claim that trial counsel was ineffective for failing to investigate.

### F. Ground Six - Juror Bias and Inadequate Cross-Examination

In Ground Six, Petitioner argues that counsel was ineffective for failing to investigate the improper communication between the trial judge, his judicial assistant, and an impaneled juror. (Doc. 3 at 11) Petitioner asserts that trial counsel should have requested a mistrial based on juror bias. Petitioner presented this claim on post-conviction review. The trial court rejected it without discussion. Although the State court did not explain its decision, Section 2254(d) applies to this summary denial of Petitioner's claim. *Richter*, 562 U.S. at ___, 131 S.Ct. at 786.

Petitioner's case proceeded to trial on December 9, 2004. At the outset, the trial judge introduced his staff, including his judicial assistant, who was not present in the courtroom. The trial judge stated:

Let me go ahead and introduce everyone. My name is Greg Martin. I am a judge

on the Superior Court.  Again, my court reporter is Melinda Setterman, the lady to my right. Elaine Hill is my deputy clerk for today.

Greg Paduganan - you already met Greg. Deputy Patterson is here to the left. She is usually in the courtroom as well. Also a part of my staff but not usually in the courtroom is my judicial assistant, Ann Kaites. If you are one of the 14 people, it is likely you will meet her.  She is in the outer officer, and she's . . . my judicial assistant.

By chance, does anybody know either me or somebody here on the staff at all? Okay.

(Respondents' Exh. W at 9)  When the court next convened, the trial court notified the parties that his judicial assistant, who had not been in the courtroom during *voir dire*, knew one of the jurors. (Respondents' Exh. U at 4)  The juror was the mother of a someone with whom the judicial assistant had attended school. The judicial assistant had not seen the juror in 20 years. (*Id*.)  When asked whether anyone on the jury panel knew the judicial assistant, Ann Kaites, the juror did not respond because she did not know the judicial assistant by that last name. (Respondents' Exh. W at 4)  The trial court had the following discussion with the juror on the record:

The Court: Okay.  This is juror 4.  I understand you know Ann?

The Juror: Yes, I do.

The Court: Okay.  And when I said her name, I said her married name of course. You probably know her as Ann Peralta?

The Juror: Yes.

The Court: The fact that she's my judicial assistant, is that going to make it hard for you to be a fair and impartial juror in this case?

The Juror: No.

The Court: Any questions?

Ms. Kay: None from the State.

Ms. Todd: None from the defense, your Honor.

(Respondents' Exh. U at 4-5)

The Sixth Amendment's right to a jury trial "guarantees a criminally accused a fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The bias or prejudice of a single juror denies a defendant the right to a fair trial. *Tinsley v. Borg*,

895 F.2d 520, 53-24 (9th Cir. 1990); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979). The test for determining whether a juror is biased is whether the juror had such fixed opinions that he or she could not judge the guilt of the defendant impartially. *Patton v. Yount*, 467 U.S. 1025, 1035 (1984). A trial judge's finding that a particular juror was not biased has been regarded as a factual finding subject to the statutory presumption of correctness, because "resolution [of the juror impartiality issue] depends heavily on the trial court's appraisal of witness credibility and demeanor." *See Thompson v. Keohane*, 516 U.S. 99, 111 (1995); *Wainwright v. Witt*, 469 U.S. 412, 428-29 (1985); *Patton*, 467 U.S. at 1038. Petitioner has not meet his burden of adducing clear and convincing evidence to overcome this presumption. *See* 28 U.S.C. § 2254(e)(1).

The attenuated relationship between the judicial assistant and the juror in this case does not support a claim of implied bias. The judicial assistant was not in the courtroom during *voir dire* and the juror at issue did not recognize her current last name. The trial court was immediately notified when the juror and the judicial assistant realized they knew each other. The trial court notified counsel for both sides and conducted an examination of that juror to determine whether she could remain impartial. The juror confirmed that she could remain impartial. Nothing suggested that the juror's response was not truthful. Counsel for the State and the defense were permitted, but declined, to ask questions. Defense counsel had no reason to infer improper communication or juror bias from this incident. Petitioner has not shown that trial counsel was ineffective for failing to further pursue the issue of juror bias.

In Ground Six, Petitioner also argues that trial counsel was ineffective for failing to adequately cross-examine the State's witnesses. (Doc. 3 at 11) Petitioner argues that defense counsel's cross-examination of the State's witnesses, including the alleged victim and three police officers who responded to the scene, was "of no significance." (Doc. 3 at 11E) He specifically argues that counsel was ineffective for failing to question "Stacy Hubbard, a technician with the Phoenix Police Department crime lab" about whether she compared the latent prints found at the scene with exemplars from Danny Miller. (Doc. 3 at

11D)

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Here, Petitioner's defense was that he was merely present in the victims's house looking for Danny Miller who was giving him a ride home, but had stopped at the victims' house to conduct some business. The record reflects that counsel pursued that defense. On cross-examination of the victims' son, Patrick, defense counsel called into question his ability to identify Petitioner as the intruder. Counsel emphasized that Patrick's identification of Petitioner was based "upon when [he] saw the police bring [Petitioner] out of the house . . . ." (Respondents' Exh. W at 153) Counsel further elicited testimony from Patrick that his identification of Petitioner "was not based on the intruder in the house," because he only had a limited sighting of the intruder in the dark. (Respondents' Exh. W at 153-54)

Defense counsel's cross-examination of the police officers, who responded at the scene, focused on the fact that the description of the intruder given to the 911 operator that did not match Petitioner's features or his clothing, that officers did not find a baseball cap the intruder was reportedly wearing, that Petitioner had a substantial sum of money - over $650.00 - in his wallet that did not belong to the victims, and that officers did not attempt to obtain latent prints from the light bulb that had been removed from the motion sensor. (Respondents' Exh. U at 38-40, 51-52) Defense counsel did not cross-examine Stacy Hubbard, the latent print examiner, who testified on direct that Petitioner was excluded from one of the fingerprints she examined and that she did not match the second print to any known exemplars. (Respondents' Exh. X at 14, 19-20)

During closing argument, defense counsel argued that the State had not established beyond a reasonable doubt that Petitioner was in the home to commit a burglary. (Respondents' Exh. V at 60) Counsel reiterated that the State had not presented any fingerprint evidence connecting Petitioner to the crime, that the fingerprint evidence presented excluded Petitioner, and that the police officers had not attempted to take fingerprints from the light bulb of the motion sensor. (Respondents' Exh. V at 59-60) Counsel further argued that

police had not tried to match the pry marks on the window with the Leatherman Tool found on Petitioner. (Respondents' Exh. V at 59-60)  Defense counsel also argued that description of the intruder given to the 911 operator did not match Petitioner's appearance, and argued that it did not make sense that Petitioner would commit the robbery when he had nearly $650.00 in cash on his person. (*Id.* at 61-62)

The record reflects that Petitioner's trial counsel adequately cross-examined the State's witnesses. His cross-examination focused on Petitioner's mere-presence defense, and the weaknesses in the State's case - including the lack of fingerprints connecting Petitioner to the crime scene, and the discrepancies between the description of the intruder given to the 911 operator and Petitioner's appearance.  Petitioner has not shown that the State court's rejection of his claim of ineffective assistance of counsel based on counsel's failure to cross-examine witness is contrary to, or based on an unreasonable application of, Supreme Court precedent.

### G.  Ground Seven - Failure to Adequately Advise on Merits of Plea Offer

In Ground Seven, Petitioner argues that counsel was ineffective for failing to properly advise him of a plea offer, and failing to adequately inform him of risks of going to trial and his sentencing exposure.  (Doc. 3 at 12)

Petitioner raised this claim during post-conviction proceedings and the State court conducted an evidentiary hearing. (Respondents' Exh. K)  At the evidentiary hearing, trial counsel testified that the State had extended several plea offers but that the first, mandating a term of 7 years' imprisonment, was withdrawn by the State shortly after it was extended. (Respondents' Exh. N at 35, 37)  The plea was withdrawn on March 22, 2004 after the police detective investigating the case objected to the plea offer as too lenient. (Respondents' Exh. N at 17-18, 37)  A second plea offer was extended for a sentencing range of 10 to 13 years imprisonment, but Petitioner rejected that offer after informing counsel that he had given a free-talk in a murder case that the State could not prove without his testimony, and he thought the State would extend a better offer. (Respondents' Exh. N at 28, 37)  Peti-

tioner told defense counsel that he was telling the truth, that he wanted to go to trial, and that he thought he would be acquitted. (*Id*. at 28, 30)  Petitioner asked counsel about the substantial difference in the proposed sentences between the two offers and asked what had happened to the offer for a term of 7-years' imprisonment. (*Id.* at 36-37)

Defense counsel testified that she explained the terms of the plea offer to Petitioner, discussing the impact of his 20-plus prior felony convictions on the sentencing range, and informed Petitioner that he would be subject to "an extremely aggravated sentence" if convicted at trial, "which was much worse than we get under the plea offer."  (Respondents' Exh. N at 27)  Defense counsel also explained that the plea offer was for a sentencing range of not less than 10 years and no more than 13 years, and that it "was better than what he was going to get from [the trial judge]." (*Id*. at 31)  Petitioner never conveyed to counsel that he interpreted the sentencing range to be an additional 13-year sentence. (*Id.*)  Defense counsel testified that she reviewed the merits of the case with Petitioner, and informed him that his version of the events could not be corroborated and that she "didn't think the jury was going to believe his story. His story was simply beyond belief." (Respondents' Exh. N at 28) Defense counsel confirmed with the prosecutor and the previous defense attorney that Petitioner had had discussions with the State about testifying in a murder case. (*Id*. at 33) The State offered Petitioner an "8 to 11-year" plea offer if Petitioner cooperated in the murder case. (*Id*. at 34, 37)  Petitioner rejected the offer, stating that it was "still too much time." (*Id.* at 37)

Counsel further testified that, on the first day of trial which ended in a mistrial, Petitioner gave counsel the name of a woman he said would corroborate his story. Counsel called the woman, but she hung up the phone once counsel explained the nature of her call. (Respondents' Exh. N at 28-29)  After the mistrial, the attorneys talked to the jurors who conveyed that they did not believe Petitioner's version of the events. (Respondents' Exh. N at 29)  After speaking to the jurors, the State notified defense counsel that it would re-extend the "10 to 13-year" plea offer, but that Petitioner would have to accept it immediately.

(Respondents' Exh. N at 29-30)  Defense counsel conveyed the jurors' impressions to Petitioner, and Petitioner stated that he did not care and wanted to select a new jury. (*Id.* at 30)  Defense counsel told Petitioner that the State had re-extended the "10 to 13-year" plea offer. (*Id.* at 31)  Defense counsel's discussion with Petitioner was brief and focused on the length of the sentence offered. (*Id.*)  Petitioner rejected the plea offer because the sentence was too long. (*Id.* at 32)

At Petitioner's first trial, when the court decided that it would grant a mistrial, the judge asked the prosecutor how quickly she could retry the case. (Respondents' Exh. Y at 40)  The prosecutor responded that Petitioner could accept the plea offer, or the trial would commence the following day. (*Id.*)  The court asked about the terms of the plea offer and defense counsel stated that it was a "10 to 13-year" plea. (*Id.* at 41)  As the parties discussed an additional term of the plea offer, defense counsel interrupted and stated, "my client just informed me that he's continuing to reject that offer." (Respondents' Exh. N at 42)  The jury returned to the courtroom and the trial court declared a mistrial. (*Id.*)

At the evidentiary hearing on Petitioner's petition for post-conviction relief, Petitioner testified that he first became aware of a plea offer including a 7-year term of imprisonment after he received the file from appellate counsel. (Respondents' Exh. N at 7-9)  Petitioner also stated that he did not hear about the "10 to 13-year" plea offer until a mistrial was declared. (*Id.* at 9-11)  Petitioner stated that he and counsel had a brief conversation about the plea offer at the defense table and it was the only conversation he ever had with counsel about that plea offer. (*Id.* at 11-13)  Petitioner testified that he understood the "10 to 13-year" plea offer to mean that the trial court could "give [him] up to 13 plus years" or "the top was 13 and aggravated meant that [the court] could go over the 13 and give [him] a few years on top of it."  (Respondents' Exh. N at 10-11)

At the conclusion of the evidentiary hearing, the post-conviction court found that Petitioner had not met his burden of establishing that trial counsel rendered ineffective assistance.  The State court explained:

The testimony from Ms. Todd (defense counsel) indicates that she did in fact, have a conversation with Mr. McDonald in the jail regarding the plea agreement, that she had the plea agreement with her, that she advised the defendant of the stipulations in the plea agreement for an aggravated term of 10 to 13 years and that there was some discussion regarding the 7 years being withdrawn.

So it sounds like based on her testimony, Mr. McDonald also knew about the seven-year offer and I don't need to reach the second prong unless I find that counsel's performance was deficient.

I find that the defendant has not proved by a preponderance that defense counsel's performance was deficient and he was aware of the offer and communicated to him in the jail and communicated again to him after the mistrial, as reflected in the transcript and the resuscitation of the conversation between the prosecutor, the Court and defense counsel on page 12 of Mr. Beene's response [to the petition for post-conviction relief.]

Petition for Post-Conviction Relief is dismissed.

(Respondents' Exh. N at 47-48)

Petitioner has not shown that the State court's ruling was contrary to, or an unreasonable application of, federal law. The relevant federal law governing ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing of "both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U. S. ___, 129 S.Ct. 1411, 1420 (2009). The Sixth Amendment guarantees a criminal defendant effective assistance of counsel during all critical stages of the criminal process, including plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003). Thus, *Strickland's* two-prong test applies to ineffectiveness claims in connection with the plea process. *Hill*, 474 U.S. at 57. The first part of the inquiry is whether counsel's performance was "within the range of competence demanded of attorneys in criminal cases." *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). The second part focuses on whether counsel's deficient performance affected the outcome of the plea process. *Id.*, 474 U.S. at 59. Petitioner must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

"'Surmounting *Strickland's* high bar is never an easy task.'" *Richter*, 131 S.Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S.___, 130 S.Ct. 1473, 1485 (2010)). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 131 S.Ct. at 788 (quoting *Strickland*, 466 U.S. at 690). Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult, because both standards are "highly deferential," 466 U. S. at 689, and *Strickland's* general standard has a substantial range of reasonable applications. The issue under § 2254(d) is not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Richter*, 131 S.Ct. at 788. The Supreme Court recently addressed the reasons for a "most deferential" standard for judging counsel's performance:

> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.

*Premo v. Moore*, ___ U.S.___, 131 S.Ct. 733, 739–40 (2011). The Court also recognized that "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks" of a plea. *Id*. at 741. Considerations surrounding these strategic choices in the pre-trial context "make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id*. Mindful of these principles, the Court will consider whether the State court unreasonably applied *Strickland* to the facts of this case. 28 U.S.C. § 2254.

### A. Whether Counsel's Performance was Deficient

To establish a claim of ineffective assistance of counsel under *Strickland*, a petitioner must establish that his counsel's errors were so serious that counsel was deficient, and that counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To be deficient, counsel's representation must have fallen "below an objective standard

of reasonableness," *Id*., 466 U.S. at 688, and there is a "strong presumption" that counsel's representation is within the "wide range" of reasonable professional assistance. *Id*. at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). *Strickland* mandates a "strong presumption of competence." *Cullen v. Pinholster*, __ U.S. ___, 131 S.Ct. 1388, 1407 (2011). This Court must "'give [counsel] the benefit of the doubt." *Id*. (citations omitted). As stated above, the post-conviction court found that there was no evidence that trial counsel's performance was deficient. (Respondents' Exh. N) During the evidentiary hearing on post-conviction review, the trial court found that counsel discussed the plea offers with Petitioner. On habeas corpus review, this Court defers to the State court's factual findings.

The State court record establishes that the State extended several plea offers in this case and that Petitioner was aware of the offers. The State court's record further establishes that Petitioner rejected the plea offers because the sentences were too long and he thought he would be acquitted. (Respondents' Exh. N) Petitioner has not met his high burden of establishing that the State court's conclusion that trial counsel's performance was not deficient was based on an unreasonable determination of the facts, or was contrary to, or an unreasonable application of, clearly established federal law. Moreover, as discussed below, even assuming counsel's performance was deficient, Petitioner has not established prejudice.

**B. Prejudice**

Even if counsel's performance was constitutionally deficient, Petitioner is not entitled to habeas corpus relief because he fails to demonstrate prejudice. *Strickland*, 466 U.S. at 687. Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*., 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 131 S.Ct. at 1403 (quoting *Richter*, 562 U.S. ___, 131 S.Ct. at 791).

The United States Supreme Court has not specifically addressed what constitutes prejudice when a criminal defendant rejects a plea offer and proceeds to trial. The parties' briefing does not specifically address this issue. Rather, Petitioner appears to argue that, to establish prejudice, he must establish a reasonable likelihood he would have accepted a plea offer. Respondents appear to agree with this statement of the law.

The Supreme Court has held that *Strickland* applies in the context of plea bargaining. *Hill v. Lockhart*, 474 U.S. 52 (1985). However, the Supreme Court has not addressed the specific question of what constitutes prejudice when a petitioner rejects a plea offer and proceeds to a fair trial. The Supreme Court has interpreted the Sixth Amendment's right to effective assistance of counsel as ensuring a criminal defendant receives a fair trial. *Strickland*, 466 U.S. at 687. The Supreme Court reiterated in *Pinholster* that, "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Pinholster*, 131 S.Ct. at 1403 (quoting *Strickland*, 466 U.S. at 689). The Supreme Court has never held that a defendant who foregoes a plea bargain and is later convicted after a fair trial has suffered a constitutional violation. *See Nunes v. Miller*, 350 F.3d 1045, 1052 -53 (9th Cir. 2003). Rather, the Supreme Court's cases interpreting the Sixth Amendment in the context of plea bargaining have involved cases where the petitioner waived the right to a fair trial by accepting a plea offer, not a case where the petitioner rejected a plea and exercised his right to a fair trial. *Premo v. Moore*, 562 U.S. ___, 131 S.Ct. 733, 737-40 (2011); *Wright v. Van Patten*, 552 U.S. 120, 124-25 (2008); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *McMann v. Richardson*, 397 U.S. 759, 760-66 (1970). Although circuit courts, including the Ninth Circuit, have discussed *Strickland's* prejudice prong in the context of a rejected plea offer, the lack of any Supreme Court holding on that issue precludes a finding that the State court's decision in this case was contrary to, or an unreasonable application of, clearly

established Supreme Court precedent.[4] *Pinholster*, 131 S.Ct. at 1399 ("State court decisions are measured against [the United States Supreme Court's] precedents as of the 'time the state renders its decision.'") (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)); *Ponce v. Felkner*, 606 F.3d 596, 604 (9th Cir. 2010) ("If Supreme Court cases 'give no clear answer to the question presented,' the state court's decision cannot be an unreasonable application of clearly established federal law.") (quoting *Van Patten*, 552 U.S. at 126); *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) ("In light of *Musladin*, *Panetti*, and *Van Patten*, we conclude that when a Supreme Court decision does not 'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in these recent decisions . . . , it cannot be said, under [the] AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision.") (quoting *Van Patten*, 552 U.S. 120, 125 (2008) (alterations in original); *see also Earp v. Ornoski*, 431 F.3d 1158, 1184 n. 23 (9th Cir. 2005) (describing habeas petitioner's reliance on circuit-court authority as "futile" because, "post-AEDPA[,] only Supreme Court holdings are binding on state courts.") (citing *Lambert v. Blodgett*, 393 F.3d 943, 974 (9ᵗʰ Cir. 2004)).

Nevertheless, for purposes of analyzing Petitioner's claim, the Court will consider Ninth Circuit authority.[5] The Ninth Circuit has held that to establish prejudice from incorrect advice resulting in rejection of a plea offer, Petitioner "must show that there is a reasonable probability that he would have accepted the plea agreement had he received accurate advice

_____

[4] The Supreme Court has recently granted certiorari to determine, "What remedy, if any should be provided for ineffective assistance of counsel during plea bargain negotiations if the defendant was later convicted and sentenced pursuant to constitutionally adequate procedures?" *Lafler v. Cooper*, __ U.S.__, 131 S.Ct. 856 (January 7, 2011).

[5] However, as discussed below, while the Ninth Circuit has discussed *Strickland's* prejudice prong in the context of a rejected plea offer, the lack of any Supreme Court holding on that issue precludes a finding that the State court's decision in this case was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *Pinholster*, 131 S.Ct. at 1399 ("State court decisions are measured against [the United States Supreme Court's] precedents as of the 'time the state renders its decision.'") (citations omitted).

from his attorney." *Hoffman v. Arave*, 455 F.3d 926, 941-942 (9th Cir. 2006), *judgment vacated in part on other grounds by Arave v. Hoffman*, 552 U.S. 117 (2008); *see also Nunes*, 350 F.3d at 1052.

Undoubtedly, Petitioner would prefer a lesser sentence than the one he received. The Court, however, must look to Petitioner's statements and beliefs at the time of the trial to determine whether there is a reasonable probability that Petitioner would have pled guilty absent counsel's alleged deficient performance. The record here reflects that Petitioner was committed to his defense that he was merely present at the scene and did not commit any crimes. When discussing plea offers with his trial counsel, Petitioner expressed his belief that he thought he would be acquitted. Before and during his trial, during his post-conviction proceedings in State court, and in this Petition, Petitioner has consistently maintained that he was merely present at the scene and did not commit any crimes. (Doc. 3 at 10) Additionally, the record reflects that Petitioner felt that the plea offers were for too much time. (Respondents' Exh. N) Petitioner does not offer any support for his contention that he would have accepted a plea offer. The Ninth Circuit has stated that such self-serving statements are viewed with skepticism:

> [The petitioner's] self-serving statement, made years later, that [defense counsel] told him that 'this was not a death penalty case' is insufficient to establish that [the habeas petitioner] was unaware of the potential death verdict. If the rule were otherwise, every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer.

*Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (internal citations omitted).

Petitioner's consistent belief that he was merely present at the scene and had not committed a crime, does not support his contention that he would have accepted any plea offer. *See Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) (stating that, although not dispositive, "[p]rotestations of innocence throughout trial are properly a factor" in determining whether a defendant would have accepted a plea agreement).

In sum, Petitioner has not shown that the State court's rejection of his claim of

ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts. 28 U.S.C. § 2254. Thus, Petitioner is not entitled to habeas corpus relief on this claim.

**V. Conclusion**

Based on the foregoing, the Petition for Writ of Habeas Corpus should be denied and dismissed because Petitioner's claims lacks merit.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, doc. 3, be **DENIED.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6, Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /

/ / /

/ / /

/ / /

Failure timely to file objections to any factual determinations of the Magistrate

- 42 -

Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of October, 2011.


Lawrence O. Anderson
United States Magistrate Judge